# In the District Court of the United States
## For the District of South Carolina
### BEAUFORT DIVISION

| | |
|---|---|
| **Antwan Jermaine Graham, #11469-021,** ) | |
| ) | Civil Action No.  9:07-0932-JFA-GCK |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **Mildred L. Rivera, Warden, Federal** ) | **OF THE MAGISTRATE JUDGE** |
| **Correctional Institution-Estill,** ) | |
| ) | |
| Respondent. ) | |
| ) | |

## I.    INTRODUCTION

The Petitioner, Antwan Jermaine Graham ("Petitioner" or "Graham"), a federal prisoner proceeding *pro se*, seeks *habeas corpus* relief under Title 28, United States Code, Section 2241. By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post trial petitions for relief and submit findings and recommendations to the District Court.

Graham has filed his petition pursuant to 28 U.S.C. § 2241, alleging the Bureau of Prisons (the "BOP") has erroneously computed his federal sentence.  Pursuant to 28 U.S.C. § 2241, an inmate can challenge the manner in which the BOP carries out his sentence.  A petition under 28 U.S.C. § 2241 is limited to those claims challenging the validity of an individual's detention and execution of the current sentence.  Where a petitioner challenges the effect of events "subsequent" to his sentence 28 U.S.C. § 2241 is an appropriate remedy.  This type of judicial review may be sought in the district of confinement.  *United States v. Miller*, 871 F.2d 488, 490 (4th Cir. 1989); *McNair v. McCune*, 527 F.2d 874, 875 (4th Cir. 1975).  Graham presently is incarcerated in the Federal Correctional Institution, Estill, South Carolina ("FCI Estill").  This court has jurisdiction to address Graham's Section 2241 petition because Graham

is currently confined within this district and is challenging the execution of his sentence rather than the validity of his convictions.  See 28 U.S.C. § 2241(a); *In re Jones*, 226 F.3d 328, 332 (4 Cir. 2000); *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 809-10 (D.C. Cir. 1988).  In addition, venue is proper as Graham is presently confined in a correctional facility located within the District of South Carolina.  28 U.S.C. § 2241(d).

## II.    *PRO SE* PETITION

Graham is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

## III.  BACKGROUND TO THE CASE

### A.  Chronology of Events

On November 8, 2002, Graham was arrested by the Savannah Georgia Police Department for Armed Robbery, Possession Of A Firearm During The Commission Of A Crime, Aggravated

Assault, Criminal Use Of An Article With An Altered Identification Mark, Carrying A Concealed Weapon, Possession of Marijuana, and Possession Of A Firearm By A Convicted Felon.  (Exhibit #4 to Respondent's Motion [8], Affidavit of Dawn Adams-Dwyer,¶ 4).  Following this arrest, Graham remained in state custody.  (Id.)

On December 2, 2002, the Georgia Department of Corrections ("GADOC") Probation Division, issued a probation violation warrant.  (Exhibit #5 to Respondent's Motion [8], Petition for Modification/Revocation of Probation).  When Graham was arrested on November 8, 2002, he was serving a state term of probation on a prior Possession Of A Controlled Substance conviction.  (Exhibit #4 to Respondent's Motion [8], at ¶ 5).  On January 23, 2003, a probation revocation hearing was conducted and Graham's state probation was revoked.  (Exhibit #5, to Respondent's Motion [8] at Page 2).  The Court ordered the balance of probation revoked in full. (Id.).  The balance of Graham's probation was 2 years, 5 months, and 7 days.  (Exhibit #4 to Respondent's Motion [8], at ¶ 6).

On February 14, 2003, a federal grand jury for the United States District Court for the Southern District of Georgia issued an Indictment against Graham for a federal charge of Possession of a Firearm By A Felon.  (Exhibit #4 to Respondent's Motion [8], at ¶ 7).  On March 12, 2003, Graham was borrowed from the GADOC by the United States Marshals Service ("USMS") via a writ of habeas corpus ad prosequendum to appear in federal court.  (Id., ¶ 8); (Exhibit #6 to Respondent's Motion [8], Federal Writ of Habeas Corpus issued February 25, 2003).

The Petitioner was sentenced on August 7, 2003, to a term of 87 months imprisonment by the United States District Court for the Southern District of Georgia for Possession Of A Firearm By A Felon (18 U.S.C. § 922(g)).  (Exhibit #1 to Respondent's Motion [8], Judgment & Commitment Order).  On August 8, 2003, Graham was returned to the GADOC.  (Exhibit #4 to Respondent's Motion [8], ¶ 9).

On November 25, 2003, Graham appeared before the Chatham County Superior Court and was sentenced to a 7 year term of imprisonment. for the November 8, 2002, offenses (Exhibit #7 to Respondent's Motion [8], State Judgment & Commitment).  The state court

ordered this sentence to run concurrently with the previously imposed probation violation sentence he was then serving (CR00-1229-FR); and concurrently with the federal sentence.  The state court suspended the sentence until completion of the federal sentence and ordered that Graham be given credit for all time served on the federal sentence.  Finally, the state judge ordered that on completion of the federal sentence, Graham would serve the remaining balance, if any, of that sentence in the custody of the state; and all state holds were lifted to allow transport to federal prison.  (Id.)

On December 19, 2003, the GADOC mistakenly released Graham to the USMS to be placed in BOP custody.  (Exhibit #4 to Respondent's Motion [8], ¶ 11).  On February 18, 2004, Graham arrived at the United States Penitentiary (USP) Coleman, Florida, and BOP staff discovered he should not have been released from the GADOC, because he had not completed the term on his probation revocation (Exhibit 5 to Respondent's Motion [8], No. CR00-1229FR).  (Id.).  The BOP first contacted the USMS to determine why they had taken Graham from the GADOC.  (Id., ¶ 12).  The USMS explained they were only aware of the state court sentence (Exhibit 7 to Respondent's Motion [8], CR03-0188-FE) issued on November 25, 2003, and were not aware or informed of the state probation violation sentence Graham was already serving.  (Id.)  The BOP also contacted the GADOC Extraditions Unit, who agreed Graham should not have been released because he was still serving the probation violation sentence imposed on January 23, 2003 (Exhibit 5 to Respondent's Motion [8], No. CR00-1229FR).  (Id., ¶ 13).

On April 22, 2004, the BOP released Graham to the custody of the USMS, who returned him to the GADOC.  (Id., ¶ 14).  On May 26, 2004, Graham arrived at the GADOC to complete service of his state probation violation sentence.  (Id., ¶ 15).  On August 15, 2005, Graham was paroled from the state probation violation sentence and placed into exclusive federal custody.  (Id., ¶ 16).

### B.  Computation of Graham's Federal Sentence

At the time Graham's federal sentence was imposed, he was serving a state probation violation sentence of 2 years, 5 months, and 7 days.  (Exhibit #4 to Respondent's Motion [8], ¶ 17).  The November 25, 2003, state sentence relinquished state custody of Graham for that

sentence; however, it did not relinquish custody over the probation violation sentence. (Id.). This information was confirmed with the GADOC Extraditions Unit, and Graham was returned to state custody to complete service of the probation violation sentence. (Id.). The federal sentence was not commenced while Graham was temporarily placed in BOP custody. (Id., ¶ 18).

On August 15, 2004, Graham was paroled from the state probation violation sentence and placed into exclusive federal custody. (Exhibit #4 to Respondent's Motion [8], ¶ 19). The federal Judgment and Commitment Order was silent as to how the federal sentence should run with the state probation violation sentence; thus, the BOP defers to 18 U.S.C. § 3584, *infra*, and computed the federal sentence as running consecutive to the state probation violation sentence. (Id., ¶ 20). Thus, the BOP commenced Graham's federal sentence on August 15, 2004, the day he was placed in exclusive federal custody. (Id.).

## IV. PROCEDURAL HISTORY

Graham filed this Petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2241 on March 31, 2007[1] against FCI Estill's Warden Mildred L. Rivera (the "Respondent").[2] [1] On April 16, 2007, an Order was filed authorizing service of process and apprising the Respondent that any dispositive motion must be filed no later than forty-five (45) days after an answer, return, or other responsive pleading is filed. [7]

The Respondent filed an motion to dismiss the Petition or in the alternative a motion for summary judgment and a return on June 1, 2007. [8] On June 4, 2007, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Petitioner of the summary dismissal procedure and the possible consequences if he failed to adequately respond to Respondent's motion to dismiss within thirty-four (34) days. [9] On June 26, 2007, Petitioner filed a response in opposition to Respondent's motions attaching thereto his affidavit and other

---

[1] Petitioner has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery date" of his Petition. *See* Order [7] filed April 16, 2007.

[2] The proper respondent in a habeas petition is the custodian of the prisoner. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 498 (1973). Thus, Warden Rivera is the proper respondent.

documents. [12] As the issues have been joined for summary judgment, this case is ripe for review by the undersigned United States Magistrate Judge.

## V. SUMMARY OF PETITIONER'S CLAIMS

Graham claims that pursuant to 18 U.S.C. § 3585(a), his federal sentence should have commenced on March 12, 2003, or in the alternative, on August 7, 2003. Graham alleges that the BOP has not correctly calculated his federal sentence within the dictates of 18 U.S.C. § 3585(a), which he reads to require the BOP to commence his federal sentence on March 12, 2003, or August 7, 2003. Graham bases his contention on the theory that when the USMS borrowed him from state authorities on March 12, 2003, through a writ of habeas corpus for appearance in federal court, his status was converted to official federal detention. He also contends, at the very least, when he was sentenced in federal court on August 7, 2003, his status became official federal custody. Graham claims that the sentence imposed by the State of Georgia court proves he was in federal custody because that state court imposed the state sentence to run concurrently with a state probation revocation he was then serving, and suspended the state sentence until he completed service of the federal sentence.

As relief, Graham asks the Court to order the BOP to credit his federal sentence from March 12, 2003, the day he was taken into temporary federal custody under the writ, or at least August 7, 2003, the day he was sentenced in federal court.

## VI. THE STANDARDS FOR DECIDING A MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT

When resolving a motion to dismiss, a court "presumes all factual allegations in the complaint to be true and accords all reasonable inferences to the non-moving party." *Sumner v. Tucker*, 9 F.Supp.2d 641, 642 (E.D.Va.1998), *citing* 2A Moore's Federal Practice ¶ 12.07[2.5] (2d ed.1994); *see also Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978). As the Plaintiff in this case is *pro se*, and his pleadings are entitled to liberal construction, the complaint will survive a Rule 12(b)(6) motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*) (internal quotation omitted); *see also Hishon v. King &*

*Spalding*, 467 U.S. 69, 73 (1984) (holding that a Rule 12(b)(6) motion should be denied unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

In the present case, because the Motion to Dismiss has affidavits attached thereto that the court will consider, the Served Defendants' Motion to Dismiss will be treated as one for summary judgment. *See Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004).[3] As the Supreme Court held in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

### A.  Exhaustion of Administrative Remedies

The BOP's grievance procedure is a three-tiered process whereby an inmate may complain about any aspect of his confinement. 28 C.F.R. § 542.10. The process begins with the

---

[3] In *Pueschel*, the panel stated: "We note that Rule 12(b)(6) does not mandate that a district court treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion. Rule 12(b)(6) only requires that a motion to dismiss be treated as a motion for summary judgment when the motion to dismiss or exhibits present matters outside the nonmoving party's pleadings and the district court does not exclude such matters. Fed.R.Civ.P. 12(b)(6) (stating that [i]f, on a motion ... to dismiss ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."); *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 n. 7 (4th Cir.1988) (noting that district court's reliance on exhibits to motion to dismiss did not convert the motion into one for summary judgment because "the facts to which the court so referred were either alleged in the amended complaint or contained in the exhibits thereto"); *Wilson-Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 252 (4th Cir.1991) (holding that inclusion of supporting memoranda and affidavits did not convert motion to dismiss into motion for summary judgment because the district court did not consider such material).

inmate attempting to informally resolve the complaint with a staff member. 28 C.F.R. § 542.13(a). If informal resolution is not successful, the inmate may file a formal written complaint to the Warden. This complaint must be filed within twenty calender days from the date on which the basis for the complaint occurred. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, that response may be appealed to the Regional Director within twenty calender days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel within thirty calender days of the date the Regional Director signed the response. 28 C.F.R. § 542.15(a).

A review of the records reveals Graham has exhausted his remedies available under the formal Administrative Remedy procedure established by the Bureau of Prisons. (Exhibit #3 to Respondent's Motion [8], Administrative Remedies & Responses). Thus, the court will consider the merits of Graham's claims.

## VII.  DISCUSSION

### A.  The Commencement Date of Graham's Federal Sentence

As mentioned above, Graham contends that pursuant to 18 U.S.C. § 3585(a), his federal sentence should have commenced on March 12, 2003, or in the alternative, on August 7, 2003. In reviewing Graham's claim, the court must begin with the well-settled premise that the execution of sentences and the computation of jail time is an administrative function under the authority of the Attorney General, who has delegated this task to the BOP, including the responsibility for computing time credits and determining a sentence termination date once the defendant actually commences serving his sentence. *United States v. Wilson*, 503 U.S. 329, 335 (1992).

The federal statute that sets forth when a federal sentence commences states:

> **(a) Commencement of sentence**.– A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585 (a). Under Section 3585(a), a federal sentence cannot commence prior to the date it is pronounced, even if the sentence is made concurrent with a sentence already being served. *U.S. v. McLean*, 867 F.2d 609 (4th Cir. 1989) (unpublished); *Coloma v. Holder*, 445 F.3d 1282, 1284 (11th Cir. 2006); *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980). Thus, Graham's claim that his federal sentence should have commenced prior to August 7, 2003, is not supported by the plain words of the statute.

Graham likewise is not entitled to have his federal sentence commence on March 12, 2003, or August 7, 2003, because on these dates Graham merely had been borrowed by the USMS, via a writ of habeas corpus ad prosequendum, from the GADOC to appear in federal court, as reflected in the records before the court. (Exhibit #4, ¶ 8); (Exhibit #6). Courts have consistently held that a federal sentence does not begin to run when a defendant is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum; instead, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation. *Thomas v. Whalen*, 962 F.2d 358, 361 n. 3 (4th Cir. 1992) ("A prisoner is not even in custody for purposes of [18 U.S.C.] § 3568[4] when he appears in federal court pursuant to a writ ad prosequendum; he is merely "on loan" to authorities."); *see also Free v. Miles*, 333 F.3d 550 (5th Cir. 2003) (collecting cases on credit in interrupted sentence cases, and denying credit).

### B. The State Sentence Imposed November 25, 2003, Is Of No Consequence To Graham's Current Federal Sentence Computation

The Respondent has clearly refuted Graham's assertion that at the time the federal sentence was imposed he was serving no other sentence. *See* Exhibit #5; (Exhibit #9, Report and Recommendation and Order Re: Case No. CR403-048).[5]

The Respondent has conceded that the federal Judgment and Commitment Order was silent as to whether the federal sentence was to run concurrently or consecutively with the

---

[4] 18 U.S.C. § 3585 is the successor statute to § 3568.

[5] "At the time of his federal indictment on February 14, 2003, defendant was serving a state sentence for a probation violation and appeared before this court on a writ of habeas corpus ad prosequendum." (Report & Recommendation, Page 2).

undischarged state probation violation sentence. (Exhibit #1). This fact, however, does not carry the day for Graham. When confronted with this situation, the BOP looks to 18 U.S.C. § 3584, which states:

> **(a) Imposition of concurrent or consecutive terms.**– If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. **Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.**

18 U.S.C. § 3584 (a) (emphasis added). Thus, in accordance with § 3584 (a), the BOP has computed Graham's federal sentence as running consecutively to the state probation violation sentence. (Exhibit #4, ¶ 20).

Graham appears to believe that the state sentence imposed on November 25, 2003, caused the state to relinquish primary jurisdiction to the federal government. His belief apparently rests on the wording of the sentence imposed by the Honorable Penny Haas Freesemann:

> Count 3: Seven (7) Years to Serve. Credit for Time Served From October 30, 2002. Sentence concurrent to CR00-1229-FR. Seven years suspended until completion of federal sentence in CR0403-48. With defendant to be given credit for all time served on federal sentence, upon completion of federal sentence, defendant shall serve remaining balance, if any, of this sentence, in custody of the state, all state holds lifted to allow transport to federal prison.

The wording of this state sentencing order assumes that Petitioner will serve his federal sentence prior to the seven years imposed under that state order. (Exhibit #4, ¶ 10). However, it does not relinquish custody for the previously imposed state probation violation sentence Graham was already serving. (Id.). Interpretation of the November 25, 2003 state sentencing order apparently confused officials at the GADOC and the USMS which caused Graham to be mistakenly released into federal custody. This mistake was caught and remedied by BOP

officials who arranged for Graham to be returned to the GADOC to complete service of the state probation violation sentence. (Id., ¶ 11-15).

Graham next contends the actions of the Respondent in returning him to the GADOC after he had been taken into federal custody violated his right to serve his federal sentence uninterrupted in violation of the principals discussed in *Weekes v. Fleming*, 301 F.3d 1175 (10th Cir. 2002)[6], and *Luther v. Vanyur*, 14 F.Supp.2d 773 (E.D.N.C. 1997).[7] Graham argues that he should have been considered to be in primary custody of the federal government on March 12, 2003, or August 7, 2003, and be credited with this time toward his federal sentence accordingly. There is a common law rule, relied upon in *Weekes* and *Luther*, that unless interrupted by fault of the prisoner, a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it. *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930); *Dunne v. Keohane*, 14 F.3d 335, 336 (7th Cir. 1994). This rules serves the goal of preventing the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations. *Free*, 333 F.3d at 554. Those policy concerns served by this common law rule are not implicated in this case, because Graham has received credit on his state probation violation sentence for all the time he was in federal custody, as discussed below.

---

[6] In *Weekes*, the prisoner was released from state custody and surrendered to federal authorities for prosecution under federal charges. The prisoner returned to state custody for a brief period to attend a hearing on state charges, but again was released to federal custody. After sentencing under the federal charges, the prisoner was committed to the Bureau of Prisons. However, he was returned to state custody approximately two months later to serve the state sentence. The court held the prisoner was to be given time served from the date he was delivered to the federal facility because the United States was unable to provide evidence that the transfer by the state authorities was conditional or temporary (i.e., pursuant to a writ of habeas corpus ad prosequendum) which led to the presumption that both the United States and Idaho agreed to a permanent change of custody.

[7] In *Luther*, the prisoner was convicted and sentenced on federal charges, but he absconded before his federal sentence commenced. While on the lam, he was arrested and convicted on unrelated state charges. He was then erroneously transferred to federal custody, and served more than three years of his federal sentence before being returned to state custody. On completion of his state sentence, the prisoner was paroled and taken back into federal custody to complete his federal sentence. The court held the Bureau of Prisons decision to return the prisoner to state custody was not a transfer attributable to the prisoners fault, and since the prisoner has a right to have his federal sentence run continuously, without interruption, the time he was in state custody was to be counted toward his federal sentence.

The manner in which Graham's federal sentence has been computed keeps him in the same position he would have been had he remained in state custody to serve the state sentence. (Exhibit #4, ¶ 22). Thus, the error in his placement in federal custody from December 19, 2003, to May 26, 2004, is of no legal consequence. The record clearly reflects that Graham was in the sole primary custody of state authorities from the date of his arrest on November 8, 2002, until his mistaken placement in federal custody on December 19, 2003. (Id.) The BOP caught the mistake and arranged for Graham's return to the GADOC which was completed on May 26, 2004. (Id.) As a matter of statutory construction under 18 U.S.C. § 3584(a), it was the federal sentencing court's intent that the federal sentence was to run consecutively to the state probation violation sentence. Thus, Graham's federal sentence has been computed in the same manner it would have been had Graham remained in state custody during the period he was mistakenly in federal custody. (Id.). Thus, the mistake has no legal consequence to Graham.

Moreover, this result does not implicate the policy concerns on which the rule against piecemeal incarceration is grounded, and does not justify or mandate that Graham receive a "get out of jail early" card because of an administrative error. *See Free*, 333 F.3d at 555; *Dunne*, 14 F.3d at 337; *Cox v. Federal Bureau of Prisons*, 643 F.2d 534, 537 (8th Cir. 1981) (federal inmate not entitled to federal credit for time served in state custody on state sentence where this state time interrupted the federal sentence).

As the record reflects, Graham's total time of incarceration in both federal and state prisons, has not been, and will not be increased by even a single day as a result of his temporary, if mistaken, placement in federal custody for the brief time period prior to completing full service of his state probation violation sentence. Graham is not entitled to have his federal sentence commence on March 12, 2003, or August 7, 2003, nor is he entitled to any credit toward his federal sentence for time spent serving the state probation violation sentence.

In conclusion, Graham is not entitled to any prior custody credit because all of the time he spent in custody since his arrest by state authorities on November 8, 2002, was credited toward service of his state probation violation sentence, including the time he was improperly confined at a BOP facility. (Id., ¶ 21).

## RECOMMENDATION

Based upon the reasons set forth above, it is recommended that Petitioner's Petition for Habeas Corpus relief **[1] should be dismissed, and the Respondent's Motion [8] should be granted.**

*George C. Kosko*
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

July 30, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).